UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-384-GWU

BEULAH HARRIS,                                                           PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

<mark>07-384 Beulah Harris</mark>

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Beulah Harris, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, osteoarthritis, osteopenia, chronic obstructive pulmonary disease with asthma, anxiety, and depression. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Harris retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 19-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 49-year-old woman with an eighth grade education and work experience as a waitress, could perform any jobs if she were limited to "medium" level exertion, and

07-384 Beulah Harris

also had the following non-exertional restrictions. (Tr. 419).¹ She: (1) could occasionally climb ramps and stairs; (2) had to avoid dust, fumes, smoke and noxious gases; and (3) would be limited to low stress, simple, one-two-three-step instructions and working at her own pace as opposed to a "production number" job. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to asthma, emphysema, bulging discs, osteoporosis, arthritis, irritable bowel syndrome, anxiety, and depression. (Tr. 55). She alleged an onset date of May 28, 2003 (Tr. 56) when she was involved in a motor vehicle accident (Tr. 119-34). She had later returned to work on a part-time basis at what she called a "light duty" job as a hostess and cashier, but did not do well and stopped work completely after May, 2005. (Tr. 56, 408-9).

Medical evidence in the transcript includes emergency room records from May, 2003 after the motor vehicle accident, with most objective tests at that time being normal apart from problems in the left knee. (Tr. 121-33). Dr. Nancy Morris,

---

¹The exertional level provided by the ALJ to the VE is listed as "inaudible" in the transcript. (Tr. 419). However, the ALJ ultimately found that the plaintiff could perform medium level work (Tr. 19), and the plaintiff does not raise this issue on appeal.

07-384 Beulah Harris

the plaintiff's treating family physician at the time, saw Mrs. Harris on June 2, 2003, and noted obvious edema and hematoma of the left knee, and also diagnosed low back pain secondary to the motor vehicle accident. (Tr. 279-80). Dr. Morris eventually obtained an MRI of the lumbosacral spine which she interpreted as showing degenerative disc disease with a herniated disc at L4-5, although the radiology report states that there was only "very minimal" bulging without focal herniation. (Tr. 271, 308). Dr. Morris noted no neurological impairments and recommended that the plaintiff continue physical therapy and medications. (Tr. 271). By January 27, 2004, Dr. Morris noted that her patient's condition was "much improved" although pain was still present, and she could walk, stand, or sit "for periods without significant pain." (Tr. 265). She still had a decreased range of motion of the lumbar spine with "minimal" paraspinal muscle spasm. (Id.). Her office notes indicate that she recommended one more month of physical therapy. (Id.). The physical therapy notes indicate that on February 3, 2004, the plaintiff reported that Dr. Morris had released her to return to work. (Tr. 142). The plaintiff then began working part-time, four to five hours a day, at a restaurant, but complained of increased pain following her shift. (Tr. 141). The physical therapy discharge summary on March 25, 2004, states that the plaintiff was obtaining temporary relief with physical therapy, but reported increased pain with activity and still did not have a full range of motion in her spine. The physical therapist said that

she was able to return to work "[with] restrictions," but did not say what the restrictions were. (Tr. 136).

Dr. Morris noted on February 29, 2004 that the plaintiff had a different job where she did not have to do as much lifting, and recommended a continuation of conservative management. She apparently referred her patient to a neurologist, Dr. William Brooks, in August, 2004 due to complaints of low back pain occasionally radiating into the lower extremities, in what Dr. Brooks described as a non-dermatomal distribution. (Tr. 214). Dr. Brooks obtained an MRI (Tr. 308) showing only disc degeneration with no evidence of herniation (Tr. 214). Her examination was "relatively innocent" other than a positive Patrick's test.[2]  (Id.). He listed his impression as sacroiliac joint dysfunction, concluded that Mrs. Harris did not require surgery, and recommended that she see a chiropractor. (Tr. 214).

The plaintiff reported to Dr. Ray Hays, apparently in the same practice with Dr. Morris, in January, 2005, that the chiropractor was helping her significantly. (Tr. 255). The plaintiff informed her chiropractor in May, 2005, however, that she had worked her last day and her low back pain was "rough," although there was no radiation of pain. (Tr. 220). By August, 11, 2005, Mrs. Harris was complaining of increased hip and leg pain and was described by the physician as "just basically

---

[2] Patrick's test is defined in Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1688, as indicating the presence of arthritis in the hip.

07-384 Beulah Harris

crying today because the pain is so bad." (Tr. 251). One week later, she repeated her complaints, stating that the pain was getting to the point that she could not tolerate it. (Tr. 250). Dr. Hays noted that she was very anxious and in tears. (Id.). She continued to complain of anxiety and even symptoms consistent with a possible transient ischemic attack through November, 2005, the date of the most recent treatment note by Dr. Hays. (Tr. 245-9).

Dr. Hays completed a functional capacity assessment on April 12, 2006 limiting the plaintiff to lifting no more than five to ten pounds due to severe back pain, standing and walking one hour a day, sitting two hours a day, never climbing, stooping, crouching, kneeling, or crawling, occasionally balancing, and having restrictions on reaching, pushing, pulling, and working around heights, moving machinery, and vibration. (Tr. 242-4). The reasons cited for the restrictions were severe back pain, reduced lumbar range of motion, poor balance, frequent falls, severe neuropathic pain, and reduced strength in the left lower extremity. (Id.). This is the only formal functional capacity assessment given by an examining physician.

The ALJ rejected Dr. Hays' assessment, citing several factors. First, he stated that it was "contradicted by the many references to improvement and stabilization of the patient's condition with conservative treatment." (Tr. 21). In fact, as already shown, the office notes from Dr. Morris and Dr. Hays indicate an initial

improvement which allowed the patient to return to part-time work, followed by an apparent worsening of her condition in 2005. Second, the ALJ asserted that the opinion of Dr. Hays was "inconsistent with the opinion of Dr. Morris that the claimant was able to stand, walk, and sit <u>for prolonged</u> periods of time." (Id.) (emphasis added). As previously noted, Dr. Morris had said in January, 2004 that the plaintiff could "walk, stand, or sit <u>for periods</u> without significant pain." (Tr. 265). If Dr. Morris had indeed said "prolonged periods" the court would agree with the ALJ that this was not consistent with Dr. Hays' later opinion, but the phrase "for periods" is too vague to support his conclusion. Third, the ALJ cited the June 20, 2000 examination of Dr. Mark Carter, apparently conducted in connection with a previous application (Tr. 21, 114-18). Clearly, the plaintiff's condition in June, 2000, is not entitled to any weight in determining whether her condition had improved after the May, 2003 motor vehicle accident. Finally, the ALJ cited the November 1, 2005 consultative examination of Dr. Stephen Nutter which he described as showing "minimal findings." (Tr. 21). Dr. Nutter had stated that the plaintiff had "pain and tenderness of the cervical, dorsal, and lumbar spine with decreased range of motion," lumbar spasm, limitation in muscle strength testing due to pain in the legs, discomfort in the supine position, pain and tenderness in the shoulders and knees and left hand, and crepitus in the right shoulder. (Tr. 240). He did not give any opinion regarding functional restrictions. It is not completely obvious to a lay

reviewer that these results are so "minimal" as to undermine the treating physician's opinion.

The ALJ's rejection of the treating source opinion, therefore, is not supported by substantial evidence. At least three of the four factors cited by the ALJ are either erroneous or irrelevant and the fourth factor is, at best, equivocal.

The only opinion by a medical source contrary to Dr. Hays contained in the court transcript is a brief notation by Dr. David Swan, a state agency reviewing physician, dated March 8, 2006, stating that the prior determination that the plaintiff's alleged impairments were not "severe" was being adopted along with the supporting rationale. (Tr. 350). Although there is a request for a physician opinion by state agency staff dated October 18, 2005 (Tr. 319), any response to this request appears to have been omitted from the transcript. Therefore, Dr. Swan's opinion effectively does not provide any rationale, albeit through no fault of his own. In any case, the opinion of a non-examining physician can be accepted over that of an examining source in cases where the non-examiner had access to the entire record and clearly expresses the reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Dr. Swan's opinion was rendered before Dr. Hays completed his functional capacity assessment, and obviously he could not have been able to review it or express reasons for disagreement. Since neither the

13

07-384 Beulah Harris

medical opinions or the ALJ's rationale provide an adequate basis for rejecting the treating physician opinion, a remand will be required for further consideration.

A consistent order will be entered this day granting the plaintiff's motion for summary judgment.

This the 27th day of August, 2008.

Signed By:

G. Wix Unthank

United States Senior Judge